EDWARD J. CONQUEST, Trustee in Bankruptcy

vs.

MELLEN N. ATKINS et als.

Penobscot.　Opinion December 19, 1923.

*A verdict glaringly wrong and set aside.*

The evidence in this case is overwhelming that the Bulk Sales Act, so called, R. S., Chap. 114, Sec. 6, rendered void the attempted sales by the bankrupt to the defendants:

The jury in rendering a verdict for the defendants must either have failed to comprehend the significance of the testimony or have been swayed by sympathy.

On motion for a new trial by plaintiff.　An action of trover brought by the trustee in bankruptcy of Benjamin Applebaum against the defendants to recover the value of a certain stock of merchandise consisting of wall paper and paint purchased by the defendants from the said Applebaum in violation of the provisions of the Bulk Sales Act, so called, R. S., Chap. 114, Sec. 6.　The case was tried by a jury and a verdict for defendants rendered.　The plaintiff filed a general motion for a new trial.　Motion sustained.

The case is fully stated in the opinion.

*Simon J. Levi and James D. Maxwell,* for plaintiff.

*George E. Thompson and Abraham M. Rudman,* for defendants.

SITTING: CORNISH, C. J., HANSON, PHILBROOK, MORRILL, WILSON, DEASY, JJ.

CORNISH, C. J.　This is an action of trover brought by the trustee in bankruptcy of Benjamin Applebaum to recover from the defendants the value of a large quantity of wall paper and paint purchased by them in two sales, in violation of the Bulk Sales Law, R. S., Chap. 114, Sec. 6.

Both parties at the time in question were doing business in Bangor. The bankrupt occupied two adjoining stores with a connecting door.

In one he carried on a small retail grocery business and in the other a small retail wall paper and paint business. The defendants were also retail dealers in paints and wall papers. In October, 1919, according to the testimony of Mr. Atkins, one of the defendants, Applebaum went to him and solicited the defendant firm to buy his paints and papers. Nothing then came of it. Later in the fall, Applebaum importuned Atkins again to come and buy his paint and papers, but Atkins again refused to purchase as he testifies. The third time Applebaum went to him for the same purpose and that time Atkins yielded and in company with Mr. Nickerson, one of his partners, he visited Applebaum's store, made him an offer for his stock of paper which he accepted, and gave him their check therefor $119.45, dated December 16, 1919. Later they also purchased his stock of paints for $138 and gave him their check therefor on January 12, 1920. Applebaum was adjudicated a bankrupt April 12, 1920.

As to the quantity of wall paper and paint sold there is a slight discrepancy in the testimony, but the truth is apparent. Only three witnesses testified in the case, the bankrupt Applebaum, and Atkins and Nickerson, two of the defendants Atkins sought to minimize the transaction as much as he could, and stated that they did not buy all the paper and paint in Applebaum's possession, but on cross-examination he admitted that they bought about three thousand rolls of paper, which was the "major portion" of the stock, and about ninety gallons of paint, but he could not tell how much paint was left as he did not look at it.

More explicit is the testimony of Applebaum who stated that he sold all the wall paper and paint that he had, disposing of his entire stock.

This evidence is corroborated by Mr. Nickerson, the other purchaser, whose testimony differs widely from that of his partner Mr. Atkins, and is very frank, truthful and convincing, as the following excerpts show.

"Q. Now Mr. Nickerson did you buy all the paint he had at that time?

"A. Why, practically all.

"Q. You bought the wall paper and the paint not as an ordinary purchaser, but as a dealer with the intention to resell it and make a profit?

"A.   Yes, certainly.

"Q.   And were these two sales by Applebaum to you, acting for your concern, made in his ordinary course of trade and in the regular and usual prosecution of Applebaum's business?

"A.   Well, I don't know.   I have never known him to sell in such quantities.

"Q.   And you have never bought yourself from him in such quantities?

"A.   No.

"Q.   After your concern had bought the paint and wall paper from Applebaum it represented the sale in bulk of nearly the whole of his stock didn't it?

"A.   Yes."

No better illustration of a violation of the Bulk Sales Statute than this could be well conceived.   Applebaum according to his own testimony closed out his entire grocery and paint and paper business in three wholesale deals and all between December 16, 1919, and January 12, 1920; first the wall paper, then the groceries, *Conquest v. Goldman*, 121 Maine, 335, and then the paints.   He further states that after this last sale he "discontinued business" as necessity might seem to require, because he had nothing left to sell.

And yet, notwithstanding the statute which declares that "the sale in bulk of any part or the whole of a stock of merchandise otherwise than in the ordinary course of trade and in the regular and usual prosecution of the seller's business shall be void as against the creditors of the seller" (R. S., Chap. 114, Sec. 6) unless certain conditions are complied with, none of which was complied with here, the jury brought in a verdict for the defendants.   They must either have failed to comprehend the significance of the testimony or else were swayed by sympathy for the defendants who by an adverse verdict would lose what they had originally paid.   Very likely the latter, but that furnishes neither reason nor excuse for the verdict which is glaringly wrong.   The sale of the paper was a sale in bulk of a part of Applebaum's stock of merchandise, and after the sale of groceries to another party, the sale of the paints was the sale in bulk of the then whole of his remaining stock, and both sales were neither in the ordinary course of trade nor the regular and usual prosecution of the seller's business.   In fact they constituted the closing out of his business.

The defendant Atkins, tried to justify the sale as to wall papers because it was what he termed the end of the season and it was customary for retail dealers to sell broken lots at that time. Such a custom was not proven, and if proven could not affect the force of the statute. Moreover, the transaction in this case was as consistent with a custom to buy as with one to sell, because the buyers were retail dealers as well as the seller. This contention was without merit.

The violation of the statute, which of itself constitutes constructive fraud, and renders the sale void, *McGray* v. *Woodbury*, 110 Maine, 163; *Philoon* v. *Babbitt*, 119 Maine, 172; *Conquest* v. *Goldman*, 121 Maine, 335, is apparent and the verdict manifestly wrong.

*Motion sustained.*
*Verdict set aside.*